IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OMAR MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19 CV 3902 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| DETECTIVE PAULETTE WRIGHT, ) | |
| DETECTIVE TIMOTHY CERVEN, ) | |
| DETECTIVE PURTELL, ) | |
| DETECTIVE NATHANIEL, ) | |
| DETECTIVE FLAGG, ) | |
| OFFICER SANDERS, ) | |
| OFFICER PATTERSON, and ) | |
| UNKNOWN EMPLOYEES OF ) | |
| THE CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Omar Moore claims that he was framed for the murder of Wilbur Martin. Plaintiff was convicted based on three witnesses—each allegedly coerced by City of Chicago police officers. These officers allegedly knew that plaintiff was innocent.

The first witness, a friend of Martin, was with Martin when Martin was beaten to death. This witness told Chicago police officers that plaintiff was not present. The officers allegedly

threatened the witness with jail to change his story. The officers also allegedly paid him bribes and withheld evidence of those bribes from the prosecutors and from plaintiff's defense team. Other officers stated that the witness identified plaintiff from a lineup. Plaintiff alleges that those statements were false.

The second witness was also present for the beating. He, too, knew that plaintiff had nothing to do with it. Chicago police officers allegedly arrested this witness for no valid reason and threatened him with jail. But he could go free if he falsely accused plaintiff. He did just that.

The third witness allegedly told Chicago police officers that he knew nothing about plaintiff having anything to do with the beating. As they did with the others, the officers allegedly threatened this witness until he falsely accused plaintiff. And the officers allegedly fed the witness details about the beating to make his story more plausible.

No physical evidence tied plaintiff to the beating, but the three witnesses were enough. Plaintiff was convicted of murder. Ten years passed. The three witnesses recanted. Those witness recantations and other evidence of plaintiff's innocence led to plaintiff's sentence being vacated by the Circuit Court of Cook County. The prosecutors dismissed plaintiff's charges two months later, allegedly realizing that no credible evidence implicated plaintiff. The dismissal was <u>nolle prosequi</u>—a voluntary dismissal allowing the prosecutors to reopen the case in the future.

Plaintiff sues the officers, claiming that they violated state and federal law by conspiring to fabricate evidence of his guilt and to conceal evidence of his innocence. He claims that they caused him to be unlawfully detained and deprived him of liberty without due process of law. Plaintiff also sues their employer, the City of Chicago. He claims that the City is liable for what the officers allegedly did—the City, he alleges, has a custom, policy, and practice of fabricating evidence of guilt, concealing evidence of innocence, and coercing witness statements through

physical abuse and psychological manipulation—and all this, plaintiff alleges, caused him and others to be convicted of crimes that they did not commit.

The officers and the City of Chicago (together, "defendants") move to dismiss. For the following reasons, the court dismisses the unlawful pretrial detention claims so far as those claims are brought under the Fourteenth Amendment. Defendants' motion is otherwise denied.

## DISCUSSION

Defendants' attacks on plaintiff's complaint center on two related points: (1) plaintiff's criminal prosecution did not terminate in his favor, an element required for some of his claims; and (2) plaintiff's claims are untimely. Neither point is persuasive.

First, plaintiff sufficiently alleges that his prosecution terminated in his favor. Plaintiff alleges that after the Circuit Court of Cook County vacated his sentence, his charges were voluntarily dismissed in a manner indicating his innocence. Taking that allegation as true, plaintiff's prosecution was terminated favorably under both state and federal law.

Second, plaintiff's claims did not accrue until his charges were dismissed. Plaintiff alleges that defendants knew of plaintiff's innocence and fabricated incriminating evidence. He alleges that defendants coerced three witnesses using bribes and threats. Plaintiff could not have brought a civil suit based on those allegations while his criminal prosecution was ongoing—his allegations necessarily implied the invalidity of his prosecution.

### 1    Impermissible "group pleading"

Defendants begin by criticizing the form of plaintiff's complaint. They argue that the complaint is an impermissible "group pleading"—one that fails to give fair notice. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The court disagrees. Plaintiff's allegations run against specific defendants. Wright and Cerven allegedly coerced false accusations from all three witnesses. Sanders and Patterson allegedly arrested a witness for no valid reason and took that witness to detective headquarters for questioning. Purtell, Nathaniel, and Flagg allegedly lied about a witness having identified plaintiff from a lineup. Those allegations give each defendant fair notice. As for plaintiff's legal claims, most of the counts in his complaint seek relief against "Defendants." That term is defined in the complaint's prefatory paragraph. "Defendants" are:

>   Detective Paulette Wright;
>   Detective Timothy Cerven;
>   Detective Purtell;
>   Detective Nathaniel;
>   Detective Flagg;
>   Officer Sanders;
>   Officer Patterson;
>   Unknown Employees Of The City Of Chicago; and
>   the City of Chicago, Illinois.

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement" of plaintiff's entitlement to relief. It does not require pedantry. Plaintiff may substitute "Defendants" for an ungainly alternative—say, "Wright, Cerven, Purtell, Nathaniel, Flagg, Sanders, Patterson, Unknown City of Chicago Employees, and the City of Chicago." Aside from plaintiff's Monell, vicarious liability, and indemnification claims—which are obviously brought against the City—plaintiff's claims run against each individual defendant. Each of them has fair notice.

## 2    Wrongful conviction based on fabricated evidence (Fourteenth Amendment)

The court turns to defendants' challenges to the legal sufficiency of plaintiff's claims. Under the Fourteenth Amendment of the United States Constitution, the government may not

deprive people of liberty without due process of law. Plaintiff claims that his right to due process was violated because defendants fabricated evidence of his guilt and concealed evidence of his innocence. He sues defendants under 42 U.S.C. § 1983—a federal statute that allows people to sue for deprivations of their constitutional rights.

To recover damages for an allegedly unconstitutional conviction, a plaintiff suing under section 1983 must show that his criminal proceeding was terminated in his favor. Heck v. Humphrey, 512 U.S. 477, 484–85 (1994). This so-called "favorable termination" rule promotes consistency. It "precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Id. at 484 (alteration omitted), quoting Stuart M. Speiser, Charles F. Krause, and Alfred W. Gans, 8 American Law of Torts § 28:5 at 24 (1991).

Plaintiff sufficiently alleges that his criminal proceeding terminated in his favor when his charges were dismissed. Presented with witness recantations and other evidence of innocence, the Circuit Court of Cook County vacated plaintiff's sentence. The prosecutors voluntarily dismissed his charges two months later. They did so, plaintiff alleges, because no credible evidence tied him to the murder. That dismissal satisfies Heck's favorable termination rule. See Julian v. Hanna, 732 F.3d 842, 845 (7th Cir. 2013) (holding that a section 1983 plaintiff's criminal proceeding terminated favorably when, having secured a new trial in postconviction proceedings, "the charges against him were dropped without a retrial").

Defendants equate favorable termination with innocence. Heck demands no such thing. "[T]he [Heck] Court offered a list of possible resolutions that would satisfy the favorable termination requirement, and none require an affirmative finding of innocence." Savory v.

Cannon, 947 F.3d 409, 429 (7th Cir. 2020) (en banc). A criminal proceeding can terminate favorably "without a declaration of a defendant's innocence." Id. Plaintiff's sentence was vacated and his charges were dismissed. That is all he needs to allege for his section 1983 claims to satisfy Heck.

**3      Unlawful pretrial detention without probable cause (Fourth Amendment)**

Next, plaintiff claims that defendants used fabricated evidence to detain him before trial. The Fourth Amendment protects people against "unreasonable searches and seizures." That protection against unreasonable seizures bars the government from detaining a person before trial unless a judge finds probable cause to believe that he has committed a crime. Without probable cause, detention is unlawful. There is no probable cause—and detention is unlawful—when "a judge's probable-cause determination is predicated solely on a police officer's false statements" or "fabrications." Manuel v. City of Joliet, Illinois, 137 S. Ct. 911, 918, 919 (2017).

Defendants argue that: (1) unlawful detention claims arise under only the Fourth Amendment and are not cognizable under the Fourteenth Amendment; and (2) plaintiff's unlawful detention claims are untimely. The first point has merit. The second does not.

**3.1    May unlawful detention claims be brought under the Fourteenth Amendment?**

Plaintiff's complaint suggests that he seeks to bring his unlawful pretrial detention claims under not only the Fourth Amendment, but also the Fourteenth. To the extent that is so, plaintiff's unlawful detention claims are dismissed. Defendants rightly argue—and plaintiff does not deny—that "[t]he injury of wrongful pretrial detention may be remedied under § 1983 as a violation of the Fourth Amendment, not the [Fourteenth Amendment's] Due Process Clause." Lewis v. Chicago, 914 F.3d 472, 479 (7th Cir. 2019).

### 3.2 Are plaintiff's unlawful detention claims untimely?

Defendants also argue that plaintiff's unlawful detention claims are untimely. Because timeliness is an affirmative defense, dismissal would be proper only if plaintiff's complaint "plainly reveals" that his claims are untimely. United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005). Plaintiff's complaint does no such thing.

As with his wrongful conviction claims, plaintiff brings his unlawful detention claims under section 1983. Claims under section 1983 must be brought within two years of accrual. Licari v. Chicago, 298 F.3d 664, 667 (7th Cir. 2002). Such claims accrue when "the plaintiff can file suit and obtain relief." Wallace v. Kato, 549 U.S. 384, 388 (2007), quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, 522 U.S. 192, 201 (1997).

The earliest that plaintiff could have sued for relief was when his charges were dismissed. Had he tried to sue earlier, his suit would have been barred by Heck. Heck did more than establish the favorable-termination rule. It also established principles for deciding whether criminal defendants may bring civil damages suits related to their prosecution. Under Heck, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." 512 U.S. at 487. If so, the plaintiff must satisfy the favorable termination rule. Id. But if "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Id. (emphasis in original).

Heck's favorable termination rule applies to plaintiff's unlawful detention claims. Those claims turn on allegations of fabricated evidence. And those allegations of fabricated evidence necessarily would have implied the invalidity of plaintiff's ongoing criminal prosecution.

7

Last year the Supreme Court applied the favorable termination rule to a claim of fabricated evidence. Plaintiffs who bring such claims "challenge the integrity of criminal prosecutions undertaken pursuant to legal process." McDonough v. Smith, 139 S. Ct. 2149, 2156 (2019) (quotation marks omitted). They "challenge the validity of the criminal proceedings against him in essentially the same manner as the plaintiff in Heck challenged the validity of his conviction." Id. at 2158. The Court thus held: "There is not a complete and present cause of action to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing. Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated within the meaning of Heck, will the statute of limitations begin to run." Id. (footnote, citations, and quotation marks omitted).

Defendants argue that Heck has nothing to do with unlawful pretrial detention claims brought under the Fourth Amendment. They argue that plaintiff's claims expired almost a decade ago, two years after he was released on bond. Not so. Plaintiff claims that he was unlawfully detained based solely on fabricated evidence. His claims "directly challenge[ ]—and thus necessarily threaten[ ] to impugn—the prosecution itself." McDonough, 139 S. Ct. at 2159, citing Heck, 512 U.S. at 486–487. His claims thus could not have accrued until his sentence was vacated and his charges were dismissed. See Culp v. Flores, No. 17 C 252, 2020 WL 1874075, at *2 (N.D. Ill. Apr. 15, 2020) (holding that a plaintiff's "Fourth Amendment unlawful detention claim—even if that claim were limited to the time he spent in jail, and did not extend through the time he was on bond—did not accrue until the charges against him were dismissed"); Sanders v. St. Joseph County, 2020 WL 1531354 at *2 n.2 (7th Cir. Mar. 31, 2020) (unpublished) ("If . . . a conclusion that [the plaintiff's] confinement was unconstitutional would imply the invalidity of an ongoing criminal proceeding . . . , then Heck would continue to bar [the

8

plaintiff's] claim after his release . . . until either those proceedings terminated in his favor or the conviction was vacated.").

### 4    Malicious prosecution (Illinois common law)

The next claims are for malicious prosecution under Illinois common law. To avoid dismissal, those claims must be plausible. Plaintiff's malicious prosecution claims are plausible if the court, taking his allegations as true, can reasonably infer that defendants are liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Twombly, 550 U.S. at 570.

Among other elements, a malicious prosecution claim requires: (1) lack of probable cause to prosecute; and (2) favorable termination. Ritchey v. Maksin, 71 Ill. 2d 470, 475 (Ill. 1978). Defendants argue that plaintiff's complaint raises no reasonable inference of either element. The court disagrees.

#### 4.1    Was there probable cause to believe that plaintiff committed murder?

Plaintiff's allegations raise an inference that defendants lacked probable cause to prosecute him for murder. Probable cause is "such a state of facts, in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion that the person arrested is guilty." Freides v. Sani-Mode Manufacturing Co., 33 Ill. 2d 291, 295–96 (Ill. 1965) (quotation marks omitted). Plaintiff alleges that defendants knew he was innocent of murdering Wilbur Martin. They allegedly framed plaintiff using false accusations from three witnesses—witnesses coerced with threats and bribes.

Taking those allegations as true, as this court must when ruling on a motion to dismiss, defendants could not possibly have entertained "an honest and strong suspicion" that plaintiff was guilty of murder. Id. Plaintiff's allegations thus raise an inference that defendants lacked probable cause to prosecute him. In any event, defendants spend only a single, conclusory

9

sentence discussing probable cause—and such undeveloped arguments are forfeited. See Mahaffey v. Ramos, 588 F.3d 1142, 1146 (7th Cir. 2009); Haley v. Kolbe & Kolbe Millwork Co., 863 F.3d 600, 612 (7th Cir. 2017).

### 4.2 Under Illinois law, did plaintiff's criminal proceeding terminate in his favor?

Plaintiff's allegations also raise an inference that his criminal proceeding was terminated in his favor. Heck demands only that plaintiff's sentence was vacated and his charges dismissed. Illinois' favorable-termination rule demands more. Plaintiff's charges must have been dismissed in a manner "indicative of" his innocence. Swick v. Liautaud, 169 Ill. 2d 504, 513 (Ill. 1996).

Plaintiff's allegations raise that inference. He alleges that the Circuit Court of Cook County vacated his sentence based on the recantations of the three witnesses. He alleges that no physical evidence tied him to the beating. And that dearth of evidence, he alleges, led the prosecutors to voluntarily dismiss his charges. Plaintiff's allegations raise an inference that his charges were dismissed in a manner "indicative of the innocence of the accused." Id.

## 5 Civil conspiracy (Illinois common law)

In addition to his substantive claims, plaintiff claims that his prosecution and wrongful conviction were products of a conspiracy among defendants to frame him for murder. Defendants argue that plaintiff's conspiracy claims: (1) impermissibly duplicate his state tort claims for malicious prosecution and intentional infliction of emotional distress; and (2) are untimely. The court rejects both arguments.

### 5.1 Are plaintiff's civil conspiracy claims duplicative of his underlying tort claims?

Defendants argue that claims of substantive wrongs cannot coexist with claims of conspiracy to commit those wrongs. Some judges in this district have agreed. Compare Real Colors, Inc. v. Patel, 974 F. Supp. 645, 651 (N.D. Ill. 1997) (finding no personal jurisdiction

based on a civil conspiracy claim because the plaintiff failed to "include[ ] additional defendants or new facts not already pled in the underlying tort"), with Cameron v. Chicago, No. 16 C 08347, 2017 WL 3421474, at *5 (N.D. Ill. Aug. 9, 2017) (declining to dismiss a civil conspiracy claim because "the Illinois Supreme Court deems civil conspiracy a distinct cause of action that serves as an additional theory of liability beyond the underlying tort itself").

The cases dismissing civil conspiracy claims based on duplicity rely on dicta found in Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 453 (7th Cir. 1982). The Seventh Circuit reasoned that "there is no basis in common law thinking for a tort of conspiracy to commit a tort." Id. "If there is a conspiracy and it fails, there is no injury and hence no tort liability; if it succeeds, the damages are fully recoverable in an action on the underlying tort." Id. But the Seventh Circuit held that even if the district court erred in dismissing the civil conspiracy claim, that error was "harmless." Id. The plaintiff's fraud claim had gone to the jury—and that claim "allowed the jury to consider whether [the defendant] had participated in a conspiracy to defraud." Id.

Plaintiff's civil conspiracy claims are not duplicative of his other state tort claims. Under Illinois law, civil conspiracy is "a distinct cause of action." Dowd & Dowd, Ltd. v. Gleason, 181 Ill. 2d 460, 486 (Ill. 1998). However persuasive Cenco's reasoning might have been in 1982, the task of a "federal court sitting in diversity is to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." Allstate Insurance Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002). Whether civil conspiracy is cognizable under Illinois law no longer depends on predicting what the state's highest court would determine. That court has spoken.

11

After Cenco came Dowd & Dowd. There the Illinois Supreme Court recognized civil conspiracy as a distinct cause of action. 181 Ill. 2d at 486 (reversing the dismissal of a civil conspiracy claim). Even when "the allegations in the conspiracy count . . . mirror allegations made elsewhere in the complaint, the elements of the cause of action are distinct, and are not subsumed under another theory of recovery pleaded by the plaintiff." Id. Civil conspiracy "simply represents an alternative theory of liability." Id.; see Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 62 (Ill. 1994) ("The function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts."), cited in Dowd & Dowd, 181 Ill. 2d at 486. That alternative theory of liability is plaintiff's right to pursue.

**5.2  Are plaintiff's civil conspiracy claims untimely?**

Finally, defendants argue that plaintiff's civil conspiracy claims (and his intentional infliction of emotional distress claims) are untimely. Plaintiff had one year to bring those claims after they accrued. 745 ILCS 10/8–101(a). Defendants argue that plaintiff's claims accrued in April 2018 when his sentence was vacated. Not so. Plaintiff's civil conspiracy claims—like his other claims—rest on allegations of fabricated evidence. His conspiracy claims did not accrue until his criminal charges were dismissed.

Plaintiff could not sued for civil conspiracy while his criminal prosecution was ongoing. Illinois applies Heck's rule against "the possibility of a successful tort action that would contravene strong judicial policy against the creation of two conflicting resolutions." Lieberman v. Liberty Healthcare Corp., 408 Ill. App. 3d 1102, 1111 (Ill. App. 2011), cited in Northfield Insurance Co. v. City of Waukegan, 701 F.3d 1124, 1137 (7th Cir. 2012) (Hamilton, J., concurring) (noting "Illinois's embrace of [Heck's] rule"). Even after his sentence was vacated,

plaintiff was barred by Heck from suing until his charges were dismissed. See Julian, 732 F.3d at 845 ("Until [the plaintiff's] retrial was held, and ended favorably to him, or the charges against him were dropped without a retrial, which is what happened, the criminal case had not terminated in his favor.").

Consider the alternative. What if plaintiff's claims had accrued when his sentence was vacated? Had the prosecutors kept prosecuting him, plaintiff would have been forced into "an untenable choice between (1) letting [his] claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting [him]." McDonough, 139 S. Ct. at 2158. "The first option is obviously undesirable." Id. "[F]rom a criminal defendant's perspective," so too is the second "fraught with peril." "He risks tipping his hand as to his defense strategy, undermining his privilege against self-incrimination, and taking on discovery obligations not required in the criminal context." Id. And "the parallel civil litigation that would result if plaintiffs chose the second option would run counter to core principles of federalism, comity, consistency, and judicial economy." Id.

That is why no "complete and present cause of action" exists "to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." Id. Plaintiff's claims accrued when his criminal proceedings were terminated. That was on June 12, 2018, when his charges were dismissed. He sued on June 11, 2019—a day short of a year later. His civil conspiracy claims (and his intentional infliction of emotional distress claims) are timely.

## **CONCLUSION**

For these reasons, the court grants in part the motion to dismiss [Doc. 21] filed by defendant City of Chicago, which was joined by the individual defendants: Chicago police detectives Purtell, Nathaniel, Flagg, Paulette Wright, and Timothy Cerven; and Chicago police

officers Sanders and Patterson. To the extent that plaintiff Omar Moore brings his unlawful detention claims (Count II) under the Fourteenth Amendment, those claims are dismissed. Defendants' motion to dismiss is otherwise denied.

Defendants are directed to answer the complaint by July 8, 2020. The parties are directed to file a joint status report using this court's form by July 15, 2020. The court will set a status hearing after the COVID-19 emergency has abated. This order is not affected by any General Orders entered by the court.

**ENTER:** **June 10, 2020**

_____
**Robert W. Gettleman**
**United States District Judge**